Filed 12/9/13  Fehr v. Keenan CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GERALD K. FEHR, et al., | H037697 |
| Plaintiffs and Appellants, | (Santa Cruz County Super. Ct. No. CV164972) |
| v. | |
| DAVID KEENAN, et al., | |
| Defendants and Respondents. | |

Appellants Gerald K. Fehr and Teresa K. Fehr, individually and as trustees of the Fehr Revocable Trust dated April 30, 1991, (Fehrs) and respondents David Keenan and Jaeohk C. Keenan (Keenans), own adjacent property in a residential subdivision located in the City of Watsonville.  The Fehrs brought an action against the Keenans, which sought to quiet title to an alleged appurtenant easement, a six-foot wide strip between their properties, on various theories and for declaratory and injunctive relief.  Following a court trial, the court determined that "[n]o implied, express, or prescriptive easement exists in favor of the Fehrs."

On appeal, the Fehrs claim that, as a matter of law, their property has an implied easement and an express easement over a six-foot-wide walk that was created by the 1912 recordation of a subdivision map and continued by subsequent conveyances of the property.  They also assert that they satisfied all the elements necessary to establish a

prescriptive easement appurtenant to their property.  Finally, the Fehrs maintain that the Keenans lack standing to challenge the Fehrs' easement over the walkway and their use of the walkway because "the State of California is the true legal and equitable owner of the Walkway arising from the July 1963 property tax foreclosure of the reserved areas adjacent to Gonazales Park as shown in the Subdivision Map, including the Walkway . . . ."

Since the Fehrs failed to provide this court with a record adequate to evaluate their contentions, we cannot conclude that there was reversible error.

I

*Procedural History*

On August 21, 2009, the Fehrs filed a verified complaint seeking to quiet title to an implied easement and to a proscriptive easement and for declaratory and injunctive relief.  It indicated that a subdivision map, filed in 1912, created lot 29, the title to which is now held by the Fehrs' revocable family trust, and lots 30 and 31, which are now owned by the Keenans.  The complaint alleged that a six-foot-wide right of way between lot 29 and lot 30 was created by the filing and recording of the subdivision map and the subsequent sale of the subdivided lots with reference to that map.  It averred that, since about October 20, 2008, the Fehrs had been the owners of an easement of ingress, egress and other uses over that right of way.  The complaint also alleged that the Fehrs were the owners of a prescriptive easement for ingress, egress, cultivation and house maintenance.

The Fehrs filed a verified first amended complaint.  It added a cause of action to quiet title on the theory that an express six-foot-wide right of way, for ingress, egress, and other uses, was created by the original grant deed and transferred by all subsequent conveyances.

2

The Keenans filed a verified answer to the original complaint.[1]

On January 25, 2010, the Keenans filed a cross-complaint against the Fehrs to quiet title and for declaratory relief. The Fehrs filed an answer to the cross-complaint.

The parties filed their trial briefs.

Trial was held on December 21, 2010.

The trial court issued a tentative written decision in favor of the Keenans. The trial court noted that a 1911 Subdivision Map references a six-foot strip as reserved and it accepted that the original intent was to allow ingress and egress through the strip of land to a planned park, which was never developed. It found that since Glendora Adamson's 1963 transfer of property (impliedly to the Keenans), "the deeds have included all 'walks' and areas marked as 'reserved.' " It also found that a March 30, 1984 quitclaim deed and the January 20, 2009 deed conveying the property to the Keenans specifically referred to the six-foot strip. The court determined that "equity favors the Keenans." The court further found that evidence showed public use of the strip was "intermittent, at best." It commented that testimony from Michael Tinsley, a former owner of the Fehrs' property, indicated that the Smiths, the predecessor owner of the Keenans' property, considered the strip to be their property.

The Keenans filed their "Notice of Controverted Issues," which requested the addition of specified language to the court's decision. The Fehrs filed their objections to the decision. The parties filed responses to the opposing parties' documents.

On February 28, 2011, the court filed its "Statement of Decision," stating: "No implied, express, or prescriptive easement exists in favor of the Fehrs." The court found

---

[1]     The Fehrs insist the Keenans' answer was to their first-amended complaint. The Keenans state that their answer was to the original complaint. A close examination of the Keenans' answer indicates that, despite references to a first amended complaint, the answer corresponds to the original complaint based on the title of the pleading, the specified causes of action, the paragraphs answered, and the Keenans' verifications.

that the parties' requests for decision had been determined in its tentative decision or were beyond the scope of the evidence presented. It further stated that the Keenans were the prevailing parties but each side would bear its own costs. It provided that the balance of the court's previous decision would stand.

On March 1, 2011, the Fehrs filed supplemental objections to the statement of decision and requested a hearing. Their papers indicated that a new attorney had been associated in as counsel and his declaration was filed in support of their objections.

On November 28, 2011, a judgment was entered.

On December 7, 2011, the Fehrs timely filed a notice of appeal. Their designation of the record on appeal did not include the reporter's transcript of the trial proceedings.[2]

II

*Lack of an Adequate Record*

"It is well settled, of course, that a party challenging a judgment has the burden of showing reversible error by an adequate record. [Citations.]" (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575.) In addition, "it is settled that: 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see Cal. Const., art. VI, § 13.)

Here, the court reached its decision following a court trial. We reject the Fehrs' assertion that, in assessing whether the judgment should be reversed, this court may consider the Keenan's verified answer and the deposition transcript of Michael Tinsley, which was attached to the declaration of the Fehrs' new attorney filed in support of their

---

[2]    According to the Keenans' brief, the Fehrs' trial attorney did not request a court reporter.

4

"supplemental objections" to the statement of decision. "[N]ormally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Not only is our review circumscribed by the evidence presented at trial, the absence of an adequate record requires this court to resolve any issue against appellants. (See *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

Here, the appellate record does not contain any minutes of trial showing that the matter was submitted for decision on only documentary evidence or identifying the documentary evidence admitted at trial. While the clerk's transcript contains plaintiff's and defendant's exhibits marked for identification with the date of trial, except for Plaintiff's Exhibit 1, the record before us does not reflect that those exhibits were admitted into evidence at trial.[3] Moreover, the appellate record indicates that Tinsley testified at trial. But it does not include any reporter's transcript of the trial proceedings. The Fehrs did not augment the record with an agreed or settled statement. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; Cal. Rules of Court, rule 8.130(g).)

"Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct as to all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 153-154.)" (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

---

[3]     A copy of the subdivision map, appellants' exhibit 1, was lodged with this court. It too is numbered and dated. Appellants did not, however, seek to augment the record on appeal with exhibits identified as admitted.

Since the appellate record is inadequate to establish that the trial court committed reversible error, whatever the appropriate standard of review, we must affirm.  (See *Maria P. v. Riles*, *supra*, 43 Cal. 3d at pp. 1295-1296.)

DISPOSITION

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

6